*1078TEXTO COMPLETO DE LA SENTENCIA
El Sr. Ángel Concepción Lozada (en adelante, recurrente) comparece por derecho propio y se encuentra confinado bajo la custodia de la recurrida, Administración de Corrección (en lo sucesivo Administración) en la Institución Ponce Adultos 1000 del Complejo Correccional de Ponce. Nos solicita la revisión de la Resolución emitida el 30 de agosto de 2006, por el Comité de Clasificación y Tratamiento (en adelante, Comité), notificada el 16 de octubre de 2006, que lo reclasificó de un nivel de custodia mediana a un nivel de custodia máxima.
*1079Mediante Resolución emitida el 19 de diciembre de 2006, concedimos un término al Procurador General en representación de la Administración para que presentara su alegato en oposición. Este ha comparecido y solicita que se confirme la Resolución recurrida.
Luego de evaluar ambas comparecencias, así como el derecho y la reglamentación aplicable, se CONFIRMA la Resolución recurrida.
I
El recurrente cumple una pena de reclusión de ocho (8) años por los delitos de tentativa de robo e infracción a los artículos 6 y 8 de la Ley de Armas, 25 L.P.R.A. §§416 y 418, (posesión y transportación de armas de fuego sin permiso). El recurrente cumplió el mínimo de la sentencia el 24 de marzo de 2003 y, tentativamente, cumplirá el máximo el 2 de marzo de 2010. Según surge del expediente, al recurrente le fue revocado el beneficio de Libertad Bajo Palabra que disfrutaba por la comisión de los delitos por los que actualmente extingue condena. 
El 13 de enero de 2005, el recurrente salió incurso en querella disciplinaria (# 05-02-08), por violación a la Regla 5 (C) (19) del Reglamento Núm. 1986, posesión de material o equipo no autorizado por algún funcionario de la Administración de Corrección (falta mayor), por la posesión ilegal de un teléfono celular. En vista de ello, el 9 de mayo de 2005, le fue ratificada al recurrente el nivel de custodia mediana por no cumplir con el plan institucional asignado.
El 30 de mayo de 2006, le fue radicada otra querella disciplinaria (# 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) al recurrente por amenaza a su técnico socio-penal, la Sra. Carmen Vega. El 5 de julio de 2006, fue hallado incurso en dicha querella, por lo cual le fue impuesta una sanción de suspensión del cien por ciento (100%) de la bonificación por buena conducta acumulada al momento de la comisión del acto prohibido y la fecha de la emisión de la determinación final o resolución y la pérdida del privilegio de comisaría por un término de treinta (30) días, a razón de una compra por semana o cuatro (4) compras mensuales.
El 30 de agosto de 2006, el Comité se reunió para evaluar el caso del recurrente. El Comité acordó reclasificar al recurrente de custodia mediana a custodia máxima. En particular, en su Conclusión de Derechos (sic), el Comité dispuso lo siguiente:

“Al amparó (sic) de la Ley 116 del 22 de julio de 1974, según enmendada, y a la luz de lo anteriormente expuesto, el Comité de Clasificación y Tratamiento acordó Reclasificar, de custodia Mediana a Máxima. Salió incurso en querella código 16, Nivel I, por amenaza a su Técnico Socio-penal. Demostrando así no tener los controles necesarios pará funcionar en una custodia con medianas restricciones. ” 

Inconforme, el 31 de agosto de 2006, el recurrente presentó una apelación, que fue denegada el 25 de septiembre de 2006 por la Oficina del Director de Clasificación.
Acude ante nos el recurrente y, en síntesis, alega que la Administración abusó de su discreción y violó su derecho al debido proceso de ley al ser reclasificado a un nivel de custodia máxima.
II
Sabido es que el propósito primordial de la revisión judicial de las decisiones administrativas es demarcar el ámbito de discreción de las agencias administrativas y cerciorarse que éstas ejecuten sus funciones de acuerdo con la ley. L.P.C. & D., Inc. v. A.C., 149 D.P.R. 869 (1999); Mun. de San Juan v. J.C.A., 149 D.P.R. 263, 279 (1999); Misión Ind. P.R. v. J.P., 146 D.P.R. 64 (1998).
*1080Bajo el crisol judicial, las decisiones o resoluciones, al igual que las interpretaciones de las agencias administrativas, merecen gran consideración y respeto. Otero Mercado v. Toyota de Puerto Rico Corp., 163 D. P.R. _ (2005), 2005 J.T.S. 13; Rebollo Vda. de Liceaga v. Yiyi Motors, Motor Ambar, Inc., 161 D.P.R. _ (2004), 2004 J.T.S. 4; Rivera Concepción v. A.R.P.E., 152 D.P.R. 116 (2000); Castillo v. Depto. del Trabajo, 152 D.P.R. 91 (2000); Asoc. Vec. H. San Jorge v. U. Med. Corp., 150 D.P.R. 70 (2000). Esta deferencia judicial obedece a que las agencias administrativas cuentan con el conocimiento experto y con la experiencia especializada de los asuntos que les son encomendados. Otero Mercado v. Toyota de Puerto Rico, ante.
En virtud de dicha deferencia, los tribunales no deben alterar las determinaciones de hechos suscritas por las agencias administrativas “si se basan en evidencia sustancial que obra en el expediente administrativo” considerado en su totalidad. See. 4.5. de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. §2175. Véase además, Rivera Concepción v. A.R.P.E., ante; P.R.T.C. v. J. Reg. Tel. de P.R., 151 D.P.R. 269 (2000); Asoc. Vec. H. San Jorge v. U. Med. Corp., ante, a la pág. 75.
En numerosas ocasiones, el Tribunal Supremo ha reiterado que evidencia sustancial es “aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión”. Asoc. Vec. H. San Jorge v. U. Med. Corp., ante; Misión Ind. P.R. v. J.P., ante, a la pág. 131; Hilton Hotels v. Junta de Salario Mínimo, 1A D.P.R. 670, 687 (1953).
El propósito primordial de la doctrina de la evidencia sustancial es “evitar la sustitución del criterio del organismo administrativo en materia especializada por el criterio del tribunal revisor”. P.R.T.C. v. J. Reg. Tel. de P.R., ante, a la pág. 282; Misión Ind. P.R. v. J.P., ante; Reyes Salcedo v. Policía de P.R., 143 D.P.R. 85, 95 (1997). De igual forma, no le corresponde a los tribunales pasar juicio sobre los conflictos de prueba entre opiniones especializadas o científicas. Misión Ind. P.R. v. J.C.A., 145 D.P.R. 908, 940 (1998).
Correlativo con esto último, el Tribunal Supremo ha expresado que los procedimientos y las decisiones de las agencias administrativas se encuentran cobijadas por una presunción de regularidad y corrección. Ramírez v. Depto. de Salud, 147 D.P.R. 901 (1999); Com. Vec. Pro-Mej., Inc. v. J.P., 147 D.P.R. 750 (1999); Misión Ind. P.R. v. J.P., ante; Maisonet v. F.S.E., 142 D.P.R. 194 (1996). Por lo tanto, aquel que aduzca lo contrario tiene que presentar prueba suficiente que derrote dicha presunción. Ramírez v. Depto. de Salud, ante; Com. Vec. Pro-Mej., Inc. v. J.P., ante; Misión Ind. P.R. v. J.P.,ante.
De esta forma, la parte que impugne las determinaciones de hechos de la agencia tiene que convencer al foro judicial de que la evidencia en la cual se apoyó ésta para formular tales determinaciones no es sustancial. A esos efectos, el Tribunal Supremo ha indicado que la parte:
“[d]ebe demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración. ” Misión Ind. P.R. v. J.P., ante, a la pág. 131.
Por otra parte, las conclusiones de derecho emitidas por las agencias administrativas son revisables en su totalidad. See. 4.5 de la Ley de Procedimiento Administrativo Uniforme, ante. No obstante, ello no significa que los tribunales, sin razón alguna, puedan rechazar las conclusiones de derecho de las agencias administrativas e impongan su criterio. Otero Mercado v. Toyota de Puerto Rico Corp., ante.
De ordinario, los tribunales conceden gran peso y deferencia a las interpretaciones que dichos organismos realizan de las leyes que les corresponde administrar. Como señaláramos anteriormente, las agencias administrativas, contrario a los tribunales, “cuentan con experiencias y conocimientos altamente especializados sobre los asuntos que se le encomiendan”. Rivera Concepción v. A.R.P.E., ante, a la pág. 123; Castillo v. Depto. *1081dd Trabajo, ante-, Misión Ind. P.R. v. J.P., ante. Además, “las agendas administrativas son instrumentos necesarios para la interpretación de la ley”. P.R.T.C. v. J. Reg. Tel. de P.R., ante, a la pág. 283; Misión Ind P R. v. J.P., ante, a la pág. 130.
B
El Artículo VI, Sección 19 de la Constitución del Estado Libre Asociado de Puerto Rico y la Ley Núm 116 de 22 de julio de 1974, según enmendada, 4 L.P.R.A. §1101 et. seq., pautan que la política pública del Estado Libre Asociado en cuanto a las instituciones penales es que éstas propendan a la rehabilitación moral y social del confinado mediante la prestación de servicios individualizados. Dicha política pública también ha sido promulgada mediante el Mandato Constitucional de Rehabilitación, 4 L.P.R.A. §§1611 al 1616.
La clasificación de los confinados en atención a determinados niveles de custodia forma parte de ese mandato de rehabilitar al confinado tomando en consideración sus características individuales. Dicha clasificación fue delegada a la Administración de Corrección y se rige por el Manual de Reglas para Crear y , _e™1/r Funrci0nes del Comité de Clasificación y Tratamiento en las Instituciones Penales de 27 de febrero de N?-79 ÍLÍ6!?1116, Manual de Re§las de 1979) y P°r eI Manual de Clasificación de Confinados, Reglamento Num. 6067, de 22 de enero de 2000 (en adelante, Manual de Clasificación), aprobados conforme a las disposiciones de la Ley Núm. 116 de 22 de julio de 1974, según enmendada, 4 L.P.R.A. § 1101 et seq.
E1 Manual de Reglas de 1979 creó el Comité de Clasificación y Tratamiento en las Instituciones Penales y efine sus funciones. Según la Regla 2 de dicho Manual, la función básica de este Comité es evaluar al confinado en términos de sus necesidades, capacidades, intereses, limitaciones y funcionamiento social; estructurarle un plan de tratamiento el cual evaluará periódicamente para determinar si el mismo está respondiendo a las necesidades de éste y proceder con aquellos cambios necesarios para el logro de las metas rehabihtadoras y de protección social.
Las determinaciones del Comité deberán estar fundamentadas por hechos e información sometida a su consideración, y debe evidenciarse la necesidad de la acción que se aprueba o recomienda. (Véase, Regla 5 y Regla 9(C) (3) del Manual de Reglas de 1979). Asimismo, la jurisdicción del Comité de Clasificación incluye los cambios de custodia, (Regla 6(B) (2) (a)), y la acreditación, cancelación y restitución de bonificación,
e acuerdo a la Regla 10 del Manual de Reglas de 1979, ante, en toda evaluación de un caso en que se considere la asignación o clasificación de tipo de custodia, el Comité de Clasificación deberá tener presente los delitos cometidos, las circunstancias de éstos, la extensión de la sentencia dictada, el tiempo cumplido en confinamiento y aquellos factores que garanticen la seguridad institucional y pública.
A su vez, el Manual de Reglas de 1979 define los grados de custodia que tendrán las instituciones penales, a saber, maxima (Regla 10(A)), mediana (Regla 10(B)) y mínima (Regla 10(C)). En particular, la Regla 10(A) define custodia máxima como sigue:
Se entenderá por custodia máxima aquel grado de supervisión donde se aplican un máximo de controles externos y restricciones físicas por haberse determinado, luego de una evaluación analítica del caso, que el confinado tiene muy poco o ningún control sobre sus impulsos y que sus acciones, actitudes y conducta amenazan seriamente su propia seguridad, la seguridad institucional y la seguridad de las vidas y propiedades de la comunidad. Bajo este tipo de custodia, el confinado será alojado en celda individual y participara en aquellos programas de tratamiento que el Comité haya dispuesto y de otros servicios propios para su condición, bajo supervisión intensa.” (Énfasis suplido.)
Por su parte, custodia mediana es definida por la Regla 10(B) del Manual de Reglas de 1979, ante, como:

*1082
“Es aquel grado de supervisión donde se requiere un menor uso de controles externos para con el confinado por haberse determinado, luego de un estudio ponderado del caso, que éste cuenta con aquellos controles internos o los ha internalizado durante su confinamiento, que le permiten convivir con otros confinados; participar de los programas de tratamiento y de las actividades dentro del perímetro de seguridad institucional, sin necesidad de medidas de vigilancia extremas. Se considera que a pesar del confinado tener controles externos, no está preparado aún para disfrutar de actividades en el exterior del penal.

La Regla 10(B) (2) del Manual de Reglas de 1979 establece que se considerará la conveniencia de asignarle custodia mediana a un confinado mayormente a los siguientes indicadores y al análisis de los mismos no se incline hacia la asignación de una custodia máxima:

“(a) aquellos casos que pueden representar algún riesgo de fuga más allá del que representa toda persona recluida en institución penal; (b) cuando el confinado ingrese por haber violado su libertad bajo palabra o su libertad a prueba, al resultar convicto por delitos menos graves o por no cumplir con las otras condiciones impuestas; (c) confinados que disfrutando de custodia mínima incurran en nuevos delitos; (d) todo confinado que permanezca en la institución en espera de que se le celebre juicio (sumariado), o vista ante el Tribunal o la Junta de Libertad Bajo Palabra por alegadas violaciones a las condiciones de probatoria o de libertad bajo palabra; (e) todo cliente sentenciado que tenga casos pendientes por resolver en un Tribunal; (f) cuando el confinado presente una tendencia a la desobediencia de las normas de la institución y/o no muestre interés en participar en los programas de tratamiento; (g) cuando observe una conducta hostil y de reto hacia la autoridad; (h) aquellos casos que estando clasificados previamente en custodia máxima, muestran cambios favorables en su comportamiento observable y se evidencia interés en beneficiarse de los servicios y programas a su disposición; (i) los confinados que estando ubicados en centros de tratamiento públicos o privados en la comunidad, o en los Hogares de Adaptación Social, son devueltos a la institución.

A su vez, la Regla 10(A)(2) dispone que se considerará la conveniencia de asignarle custodia máxima a un confinado cuando su historial social y delictivo, así como su conducta y funcionamiento social, refleje uno o más de los indicadores que se mencionan y definen allí, tales como:
“(a) trastornos mentales o desajustes emocionales; (b) conflictos en el área sexual; (c) historial de fugas, (d) agresividad; (e) contrabando; (f) que se tenga información confiable sobre el confinado que puedá resultar en amenazas a la paz o tranquilidad del clima institucional, o a la seguridad del propio confinado o de otros ciudadanos de la comunidad; (g) actitud de indiferencia; (h) peligrosidad; (i) delincuentes compulsivos; (j) delincuentes habituales; (7c) que el confinado ingrese por haber violado la libertad bajo palabra o libertad a prueba al resultar convicto por delitos graves; y (l) que las circunstancias del delito y sus consecuencias hayan creado una situación de tensión en la comunidad, revistiéndose el caso de notoriedad púbtica y la comunidad se siente amenazada con su presencia. ” (Énfasis suplido.)
Por su parte, el Manual de Clasificación establece un sistema organizado para ingresar, procesar y asignar los confinados a instituciones y programas de la Administración de Corrección. En el mismo se establece que la clasificación de los confinados consiste en la separación sistemática y evolutiva de los confinados en subgrupos, en virtud de las necesidades de cada individuo, y las exigencias y necesidades de la sociedad. El proceso de clasificación coordina la custodia física de los confinados con los programas y recursos disponibles dentro del sistema correccional. Por lo tanto, para lograr un sistema de clasificación funcional, el sistema tiene que ubicar a cada confinado en el programa y al nivel de custodia menos restrictivo posible para el que cualifique.
Una clasificación objetiva se define como un proceso confiable y válido mediante el cual se subdivide a los confinados en grupos, basándose en varias consideraciones entre las que se incluyen: la severidad del delito, historial de delitos anteriores, comportamiento en instituciones, los requisitos de seguridad y supervisión, y las necesidades identificables de programas y servicios específicos. El sistema consta de una clasificación inicial *1083del confinado seguida de un proceso de reclasificación periódica de cada uno. El Comité de Clasificación y Tratamiento, creado por el Manual de Reglas 1979, es el responsable de evaluar las necesidades de seguridad y de programas de los confinados sentenciados.
El Procedimiento de Reclasificación de la Administración de Corrección dispone que independientemente del status legal del confinado, el personal de clasificación tiene que cumplir con ciertos requisitos al hacer una recomendación para reclasificación de custodia, tales como:

(1) revisar el auto de prisión y los documentos de apoyo complementarios que obran en el expediente criminal del confinado; (2) revisar todos los formularios médicos y de salud mental; (3) revisar las puntuaciones de aptitud correspondientes a educación, adiestramiento vocacional y trabajo; (4) comunicarse con el Tribunal u otras fuentes para obtener información adicional, aclarar información o determinar el estatus de las órdenes de detención o de arresto antes de concluir las recomendaciones; (5) llevar a cabo una entrevista de 15 a 30 minutos con el confinado con el propósito de explicarle al confinado el proceso de reclasificación, verificar y estudiar los datos básicos relacionados con la clasificación; (6) informarle al confinado su nivel preliminar de reclasificación de custodia, e informarle al confinado de la próxima revisión rutinaria de reclasificación; (7) llenar el Formulario de Reclasificación de Custodia; (8) llenar el Formulario de Evaluación de Necesidades del Confinado; (9) documentar la revisión en el expediente social del confinado y entregar copia del mismo al confinado; (10) informar al personal de Salud Correccional correspondiente cuando se va a cambiar la clasificación de un confinado que tenga una designación por su salud física y mental.

En lo pertinente, la sección 7 del Manual de Clasificación señala que la reevaluación de custodia no necesariamente tiene como resultado un cambio en la clasificación o la vivienda asignada. Su función primordial es supervisar la adaptación del confinado y prestarle atención a cualquier situación pertinente que pueda surgir. La sección 7 añade que es importante que los confinados con sentencias prolongadas tengan la oportunidad de obtener niveles de custodia reducida, condicionado a su cumplimiento con los requisitos de la institución. Dispone, además, que en la reevaluación de custodia se recalque más aún la conducta institucional como reflejo del comportamiento real del confinado durante su reclusión. ” (Énfasis nuestro.)
A su vez, el aludido Manual de Clasificación dispone que la reclasificación es la revisión periódica de los confinados en lo que respecta a su programa como parte del Plan Institucional, así como también su categoría _de custodia. La reclasificación de los confinados clasificados en custodia mediana y custodia mínima se llevará a cabo cada doce (12) meses y la de los confinados clasificados en custodia máxima, cada seis (6) meses, luego de haber cumplido el primer año de su sentencia en custodia máxima.
No obstante, la sección 7, III (B), del Manual de Clasificación dispone., además, revisiones automáticas no rutinarias, siempre y cuando se den alguna de las siguientes circunstancias:
(a) cambio en el estado legal del confinado; (b) en los cargos o en la sentencia; (c) en la cantidad de la fianza; (d) en la orden de detención; (e) convicción del confinado por una violación disciplinaria Nivel 1/ Nivel II según la define la Administración; (f) antes de salir de custodia preventiva; (g) antes de salir de segregación administrativa; (h) información nueva de que el confinado causa problema de manejo; (i) fuga o tentativa de fuga; (j) al ser dado de alta o asignado a una unidad de salud física mental que requiera hospitalización o programas especiales, cuidado de salud o vivienda; (k) sesenta días antes de que el confinado cumpla 18 ó 21 años de edad. ” (Énfasis suplido.)
Por otro lado, la “Escala de Reclasificación de Custodia del Manual de Clasificación de Confinados” (en adelante, Escala de Reclasificación) tiene unos niveles fijos al evaluar al confinado. Entre éstos están: (1) la gravedad de los cargos y condenas actuales, (2) historial de delitos graves previos, (3) historial de fuga, (4) *1084historial de acciones disciplinarias, (5) condenas previas de delitos graves como adulto, (6) edad del confinado, entre otros. Cruz v. Adm. de Corrección, 164 D.P.R. _ (2005), 2005 J.T.S. 39.
Por último, debemos señalar que el Tribunal Supremo de Puerto Rico, en Cruz v. Adm. de Corrección, ante, resolvió que "el interés público en la rehabilitación de la población penal y en la seguridad institucional debe prevalecer sobre el interés particular del confinado en permanecer en un nivel de custodia en específico o en determinada institución penal". (Énfasis provisto.)
III
Examinado el récord del recurrente, resulta forzoso concluir que el mismo apoya la determinación del Comité. Tal y como previamente indicáramos, la Regla 10(A) (2) del Manual de Reglas de 1979, expresa taxativamente que se debe considerar asignarle custodia máxima a un confinado cuando “se tenga información confiable sobre el confinado que pueda resultar en amenazas a la paz o tranquilidad del clima institucional, o a la seguridad del propio confinado o de otros ciudadanos de la comunidad’. Asimismo, la Sección 7 del Manual de Clasificación ordena al Comité celebrar revisiones automáticas no rutinarias cuando, entre otras circunstancias, se incurre en una violación disciplinaria Nivel V Nivel II según la define la Administración.
A su vez, la Escala de Clasificación utilizada para la revisión del nivel de clasificación de confinados dispone varios factores que deberán ser tomados en cuenta en dicha revisión. El Comité debe considerar factores tales como el número y gravedad de condenas disciplinarias de las que pudo ser objeto el confinado. Para cuantificar estos factores se deberá utilizar la “Escala de Severidad Disciplinaria” del Manual de Clasificación. Otros factores a ser cuantificados son: condenas previas, si alguna, de delitos graves, cometidos como adulto en los próximos cinco años; la participación del confinado en programas provistos por la institución, que será restada a la puntuación acumulada; y la edad de la persona, entre otros factores. La suma y resta de los renglones antes descritos, en términos generales, sirve para identificar preliminarmente el nivel de custodia del confinado. En el caso de confinados cuya puntuación por renglones sea un total de once (11) o más, el Comité tiene la facultad de asignarle al confinado una custodia máxima. Precisamente, eso fue lo que ocurrió en el caso del recurrente: el número de condenas disciplinarias y la gravedad de las mismas fueron los factores principales para que la suma de los renglones arrojaran un total de once (11).
A la luz de lo antes expresado, resulta indudable concluir, que el Comité no abusó de su discreción al determinar que se eleve el nivel de custodia del recurrente. Nada en el expediente nos coloca en condiciones para negarle deferencia a esa determinación de la agencia recurrida. Por el contrario, el expediente ante nos avala la decisión del Comité y su posterior ratificación en la apelación. Le corresponde al recurrente hacer los ajustes institucionales necesarios y demostrar con su buen comportamiento que es merecedor del privilegio de la custodia mediana en su próxima reevaluación por el Comité al cabo de unos meses.
IV
Ante las consideraciones antes expresadas, resolvemos CONFIRMAR la resolución recurrida de la Administración de Corrección que le confiere al recurrente un nivel de custodia máxima.
Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
Leda. María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones.
ESCOLIOS 2007 DTA 52
1. Anteriormente, el recurrente cumplió sentencia de dieciocho (18) años por los delitos de robo, asesinato en segundo grado e infracción a los artículos 6 y 8 de la Ley de Armas y el Artículo 15 de la Ley Vehicular. Dicha sentencia fue *1085extinguida el 2 de marzo de 2002, cuando comenzó a extinguir la Sentencia actual.
2. Reglamento para los Procedimientos Disciplinarios en las Instituciones Penales del Estado Libre Asociado de Puerto Rico Núm. 1986 de 18 de septiembre de 1975.
3. Véase, Resolución del Comité de Clasificación y Tratamiento, Recurso de Revisión Administrativa, Apéndice Anejo 2 folio 8. ’
4. El Manual de Clasificación de Confinados vigente es el Núm. 6067 de 22 de enero de 2000. Se aclara que la Administración de Corrección promulgó el 30 de diciembre de 2005 el Manual Enmendado de Clasificación, Núm. 7062, pero el Tribunal Federal de Distrito paralizó su vigencia mediante la Resolución del 20 de marzo de 2006, en el caso de Morales Feliciano v. Sila M. Calderón, Civil Núm. 79-0004.